## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |
|---|---|
| **GREG ATKINS,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | **Civil Case No.: PWG-14-1717** |
| | * |
| **SUNBELT RENTALS, INC.,** | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION & ORDER

Plaintiff Greg Atkins filed this action against his former employer, Sunbelt Rentals Inc. ("Sunbelt") on May 29, 2014, alleging that Sunbelt failed to pay him overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430. ECF No. 1. On August 18, 2014, Atkins filed an Amended Complaint that added a claim that, in failing to pay him overtime compensation, Sunbelt also violated Maryland's Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509. ECF No. 16. On the eve of trial, after almost two years of pretrial proceedings, the parties jointly moved on May 11, 2016 for court approval of the settlement agreement they have executed. Jt. Mot., ECF No. 47. I find the net amount Atkins is to receive to be fair and reasonable in light of the facts of this case. Additionally, I approve the attorneys' fee award under a lodestar calculation.

### I.      BACKGROUND

The parties agreed to the following facts:

On March 18, 2002, Plaintiff began employment with Sunbelt rentals as a Field Foreman ... at a pay of $22.50 per hour. Plaintiff resigned from employment on May 2, 2002 for personal reasons. Sunbelt rehired Plaintiff as a Field Foreman ... at a pay rate of $20.00 per hour on May 16, 2002. Throughout the course of Plaintiff's employment, Plaintiff worked as a field foreman. . . .

On May 30, 2002, Sunbelt transferred Plaintiff from an hourly to a salaried employee, effective June 6, 200[2]. From June 6, 2002 through August 11, 2013, Defendant paid Plaintiff a salary [which did not include overtime] for all hours worked. Effective August 12, 2013, Defendant changed Plaintiff from a salaried employee to an hourly employee and reclassified Plaintiff as a non-exempt employee. After being reclassified as a non-exempt hourly employee in August of 2013, Plaintiff's job duties and work performed did not change.

Stmt. of Undisputed Facts ¶¶ 7–10,14–16, ECF No. 26-1.

Plaintiff estimated that he worked, on average, 13.75 hours per week of overtime during the relevant period. Plaintiff calculated that he was owed $22,525.42 in unpaid overtime during the three-year statutory period. Plaintiff also claimed that his statute of limitations should be tolled from August 2013. In the event that his statute of limitations was tolled, his unpaid overtime would be $30,593.39. Plaintiff also asked that his damages be doubled and trebled.

Sunbelt alleged that it properly classified Plaintiff as an Exempt Administrative or Executive Employee, and he was therefore not entitled to overtime. Sunbelt disputed the number of overtime hours that Plaintiff claimed and asserted that no tolling was proper.

Jt. Mot. & Mem. 2–3.

The Settlement Agreement provides that it "is in full and final accord, satisfaction, and final compromise and settlement of Plaintiff's claims against the Released Parties for unpaid regular wages, unpaid overtime wages, liquidated damages, treble damages, interest, court costs, and all other monetary and equitable relief, including attorneys' fees." Settlement Agr. ¶ 3, ECF No. 47-1. It also states that Plaintiff agrees not to sue Sunbelt "with respect to any and all claims . . . of any kind whatsoever, . . . for, upon or by reason of any allegation of unpaid wages or other violation of the FLSA, MWHL, MWPCL, or comparable state law, arising out of Plaintiff's employment with Defendant, pursuant to the FLSA, MWHL, MWPCL, or comparable state law." *Id.* ¶ 5.

The Settlement Agreement does not contain a provision governing whether Atkins is the prevailing party for purposes of attorneys' fees or costs under 29 U.S.C. § 216(b), but it does include a sum for attorneys' fees. *Id.* ¶ 2. The $125,400 settlement includes (1) $30,000 to Atkins "as back wages with appropriate deductions and withholdings," and (2) $95,400 to Zipin, Amster & Greenberg LLC for attorneys' fees and costs. *Id.* ¶ 2. The attorneys' fees "were contingent on the successful outcome of the case." Jt. Mot. & Mem. 9.

## II.   DISCUSSION

### a.   FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1)

whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Joint Motion and Memorandum, as well as the previous filings, including summary judgment briefing and pretrial memoranda, make clear that several issues are in *bona fide* dispute. Most importantly, the parties disagree about the nature of the work Atkins performed (which impacts his entitlement to overtime wages), the number of hours he worked, whether Sunbelt acted willfully (which affects the length of the statute of limitations), and whether a bona fide dispute existed about Atkins's entitlement to overtime wages (which affects the availability of treble damages).

### c. Fairness & Reasonableness

In finding this settlement fair and reasonable, I should evaluate several factors, including:

"(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who

4

have represented the plaintiff[]; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery."

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

First, the parties completed discovery, which included five depositions and significant written discovery. Jt. Mot. & Mem. 3. Second, the parties reached their Settlement Agreement on the eve of trial, after almost two years of pretrial proceedings, having briefed multiple issues on summary judgment and prepared bench memoranda for trial. *Id.* at 3–4; *see* ECF Nos. 26, 26-3, 27, 28, 31, 36, 40, 41. With regard to the third factor, the parties state:

> there was no fraud or collusion related to the Settlement Agreement. Prior to accepting the settlement agreement, Defendant and Plaintiff—with the advice of their respective counsel—considered the potential value of Plaintiff's claims, considered the strength/weaknesses of Defendant's defenses, and both parties independently concluded that settlement is/was in their best interests and a fair and reasonable resolution of Plaintiff's claims. Defendant further support this result because it eliminates the uncertainties and risks of further litigation.

Jt. Mot. & Mem. 4. I accept these representations. Additionally, the parties have established Atkins's counsel's experience with FLSA cases. *See id.*

As for the fifth factor, it is not relevant in this individual action, as it pertains to class or collective actions. *See Lomascolo*, 2009 WL 3094955, at *10. With regard to the sixth factor, the total proposed settlement, exclusive of attorneys' fees, would compensate Atkins for "roughly 130% of [his] claim for back wages for the three-year statutory period or roughly 100% of [his] claim for back wages in the event that the matter was tolled." Jt. Mot. & Mem. 4–5. This amount takes "into account the risks attendant with litigation," which includes the possibility that Atkins be found to have been an exempt employee, not entitled to overtime, "as well as the possibility that, even if liability were found, Plaintiff may not be entitled to [treble] damages" or damages for the longer period of time Plaintiff seeks to recover back pay. *See Berrios v. Green*

*Wireless, LLC*, No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016). Moreover, the parties view this amount as "a reasonable compromise." Jt. Mot. & Mem. 4.

General releases can render settlement agreements unreasonable. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But here, the Settlement Agreement contains a specific release covering only Atkins's claims for unpaid wages or other FLSA, MWHL, or MWPCL violations. *See* Settlement Agr. ¶ 5. The narrow release supports the compromise amount that Atkins is to receive, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claim. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). The compromise avoids the possibility that Atkins could lose entirely.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 2d 404, (D. Md. 2014) (citing, *inter alia, Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). However, in the absence of clear binding authority to the contrary, a plaintiff "is permitted to agree that—in light of the *bona fide* disputes as to liability and the costs and risks of proceeding on the merits—accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* Atkins's settlement, like that in *Duprey*, "is better viewed as a stipulation to an amount that

6

fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings* [*v. O'Neil*, 324 U.S. 697 (1945)]." *Id.* The amount provided in consideration for Atkins's narrow release is fair and reasonable.

### d. Attorneys' Fees

The Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. Atkins's attorneys' fees "were contingent on successful outcome of the case," but they were not set as a percentage of his recovery. Jt. Mot. & Mem. 9. The Settlement Agreement proposes the Defendant pay Atkins a sum of $125,400 ($95,400 for attorneys' fees and $30,000 in damages). *Id.* at 2. Although the attorneys' fees are more than three times the damages, attorneys' fees awards may "substantially exceed [] damages" in FLSA cases. *See Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *3 (D. Md. Aug. 25, 2010) (concluding that $84,058 attorneys' fee award was reasonable, even though jury verdict in favor of three of eight plaintiffs awarded plaintiffs only $3,200, $1,200, and $2,200 each); *e.g., Butler v. Directsat USA, LLC*, No. DKC-10-2747, 2016 WL 1077158, at *7 (D. Md. Mar. 18, 2016) (approving attorneys' fees award of $258,390.67 in FLSA collective action where plaintiffs had received between $54.36 and $4,197.78, for a total of approximately $36,000) ; *see also Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015) (finding "relatively modest fee of $15,516 [to be] reasonable" where one plaintiff received $5,500 and other plaintiff received $2,500, even though "the fee sought [was] nearly double the total recovery realized by Plaintiffs," give that "this is likely to occur in FLSA actions, where vulnerable plaintiffs may be vindicating important rights that entitle them to relatively modest compensation"). Indeed, "[t]he FLSA is a civil rights statute," and "[t]he Fourth Circuit has. . . recognized that '[a]wards of attorney's fees substantially exceeding

7

damages are not unusual in civil rights litigation.'" *Nelson v. A & H motors, Inc.*, No. JKS-12-2288, 2013 WL 388991, at \*2 & n.3 (D. Md. Jan. 30, 2013) (quoting *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006); noting award of \$349,244 in attorneys' fees in Title IX suit where court awarded only nominal damages, and \$13,317 attorneys' fees award in Fair Housing Act case where court awarded only \$1,000 in compensatory damages).

"In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at \*6 (D. Md. Nov. 21, 2002) (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n. 19 (citing *Johnson,* 488 F.2d at 717–19). However, the Supreme Court has noted that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue,* 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 549, 566 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD,* No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules (D. Md. Jul. 2014, Dec. 2015 Supp.), *available at* https://www.mdd.uscourts.gov/publications/forms/LocalRules.pdf, this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc.,* 192 F.R.D. 494, 509 (D. Md. 2000). The billing rates listed for Plaintiff's three attorneys and the paralegal(s) are within the presumptively reasonable rates set forth in Appendix B of this Court's Local Rules. I find that these rates are reasonable.

As for the hours expended, the Joint Motion and Memorandum for Approval of Settlement Agreement submits detailed information listing the billable hours that Atkins's three attorneys and paralegal(s) spent for each stage of the litigation. The attorneys worked a total of 299.2 hours on this case and the paralegal(s) worked 23.8 hours. Jt. Mot. & Mem. 6–7. The parties' comprehensive analysis of the *Johnson* factors, *see id.* at 5–12, supports a finding that the number of hours expended were reasonable. Moreover, while Atkins's attorneys also noted costs incurred throughout the case including: $400 for filing fees; $3,292.08 deposition costs; $221.38 for postage/other costs; and service fees of $152.50, such that fees and costs total

$109,434.96, counsel seeks approval of attorneys' fees and costs in the reduced amount of $95,400, which is less than 90% of the total amount incurred. Taking into account the period of litigation of almost two years, which included discovery, motions practice, a pretrial conference and pretrial memoranda, I find that $95,400 for fees and costs is reasonable. Accordingly, I will approve the attorneys' fee award of $95,400.

**III.   ORDER**

Accordingly, it is this 29th day of June, 2016, hereby ORDERED that the Joint Motion to Approve Settlement, ECF No. 47, IS GRANTED.

_____/S/_____
Paul W. Grimm
United States District Judge

dh/lyb